UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| WILBUR W. WASHINGTON,<br><br>  Plaintiff,<br><br>v.<br><br>CENTER STREET FINANCE, LP, doing business as, CSF SERVICING,<br><br>  Defendant. | Case No. |

# FIRST AMENDED COMPLAINT

**NOW COMES** Wilbur W. Washington ("Plaintiff"), by and through his undersigned attorneys, complaining as to the conduct of Center Street Finance, LP, doing business as, CSF Servicing ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 *et seq.*

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FCRA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant is domiciled in Arlington, Texas and all of the events or omissions giving rise to the claims occurred in the Northern District of Texas.

1

**PARTIES**

4. Plaintiff is a consumer, and a natural person over 18-years-of-age who, at all times relevant, resided in Atlanta, Georgia.

5. Defendant is an advisory and loan servicing firm with a management team that actively invests in a range of consumer finance assets, provides on-going portfolio management for a variety of clients and advises on all facets of the consumer finance industry.

**FACTS SUPPORTING CAUSE OF ACTION**

6. On July 1, 2015, Plaintiff applied and obtained a line of credit with Defendant to finance a vehicle ("subject account").

7. In or around 2016, Plaintiff was unable to maintain timely payments towards the subject account thus the subject account fell into default.

8. Subsequently thereafter, Defendant closed the subject account and marked the subject account as charged off in Plaintiff's credit files.

9. In or around June 2021, Plaintiff noticed that Defendant began reporting the subject account as open, 120 days late, and with a balance of $15,632 to the three major credit reporting agencies.

10. Plaintiff was confused and alarmed by Defendant's reporting of the subject account as the subject account was previously reporting as charged off and closed.

11. On June 2, 2021, Plaintiff mailed a dispute letter to Equifax informing them of the error reporting to his credit reports.

12. Upon information and belief, Defendant received notice of Plaintiff's June 2, 2021 dispute and all relevant information from Equifax within five days of Equifax receiving Plaintiff's dispute. *See* 15 U.S. Code §1681i(a)(2).

13. Unfortunately, Equifax and Defendant failed to respond to Plaintiff's dispute of June 2, 2021.

14. Once more on July 6, 2021, Plaintiff mailed a second dispute letter to Equifax detailing the inaccurate reporting of the subject debt.

15. Upon information and belief, Defendant received notice of Plaintiff's July 6, 2021 dispute and all relevant information from Equifax within five days of Equifax receiving Plaintiff's disputes. *See* 15 U.S. Code §1681i(a)(2).

16. Unfortunately, Equifax and Defendant again failed to respond to Plaintiff's dispute of July 6, 2021.

17. Due to the conduct of Defendant, Plaintiff was forced to purchase services Freedom Market Pro Inc., to monitor and clean his credit report, resulting in out of pocket expenses.

18. In or around November 2021, Plaintiff and representative from Freedom Market Pro Inc., placed a three way call to Defendant to inquire about the subject account.

19. Specifically, Plaintiff was told by Defendant that the subject account should be a closed account.

20. Concerned by the negative ramifications of Defendant's inaccurate reporting, Plaintiff mailed a dispute letter directly to Defendant in hopes to rectify the error on November 19, 2021.

21. Unfortunately, Defendant again failed to respond to Plaintiff's dispute in November 2021.

22. Plaintiff was fed up with lack of response by Defendant, so he mailed a third dispute letter to Defendant via certified mailed on January 11, 2022. This dispute also went unanswered by Defendant.

23. On March 17, 2022, Plaintiff mailed a final dispute letter to Defendant via certified mail detailing the error found on his Equifax credit report.

24. According to United States Postal Service, Plaintiff's dispute was delivered to Defendant on March 21, 2022.

25. Much to Plaintiff's disappointment, Defendant failed to respond to Plaintiff's dispute despite receiving a mailed copy on March 21, 2022.

26. The reporting of Defendant's trade line is patently inaccurate, and creates a materially misleading impression that Plaintiff is seriously delinquent, owing a massive balance on a subject account that should be closed.

27. Plaintiff is concerned that he will be denied credit opportunities as a result of the false information reporting on his credit files. Defendant did not correct the errors or trade line to report accurately. Instead, Defendants wrongfully furnished inaccurate and materially misleading information after Plaintiff's disputes to one or more third parties.

28. Notwithstanding Plaintiff's disputes, Defendant failed to conduct timely and reasonable investigations of Plaintiff's disputes after being put on notice of erroneous credit reporting of the subject account in Plaintiff's credit files.

29. The reporting of the subject account was inaccurate and materially misleading because the subject account was in fact closed several years ago and is not an open account.

### IMPACT OF INACCURATE INFORMATION IN PLAINTIFF'S CREDIT FILE

30. The erroneous reporting of the Defendant account paints a false and damaging image of Plaintiff. After it was provided notice by Plaintiff Defendant did not update its trade line to accurately reflect that subject account was closed.

31. The entire experience has imposed upon Plaintiff significant distrust, frustration,

distress, and has rendered Plaintiff helpless as to his ability to regain a firm foothold on his creditworthiness, credit standing, and credit capacity.

32. The inaccurate reporting of the subject account had significant adverse effects on Plaintiff's credit rating because it created a false impression that Plaintiff was still personally liable and obligated to pay on a debt not owed by him, rendering Plaintiff a high-risk consumer and damaging his creditworthiness.

33. Moreover, as a result of the reporting false information to Plaintiff's credit files, Plaintiff's credit score dropped 40-60 points, leading to him being labeled as a high-risk consumer.

34. Additionally, Plaintiff was forced to purchase services Freedom Market Pro Inc. to monitor and clean his credit report and subject account.

35. As a result of the conduct, actions, and inaction of Defendant, Plaintiff has suffered various types of damages as set forth herein, including specifically, the loss of credit opportunity, the loss of ability to purchase and benefit from a credit line, increased interest rates, expenses arising from local telephone calls, time and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit files, and mental and emotional pain and suffering.

36. Due to the conduct of Defendant, Plaintiff was forced to retain counsel to correct the inaccuracies in his credit files.

### COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST CENTER STREET FINANCE, LP DBA CSF SERVICING)

37. Plaintiff restates and realleges paragraphs 1 through 34 as though fully set forth herein.

38. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

39. Defendant is a "person" as defined by 15 U.S.C. §1681a(b).

40. Defendant is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

41. At all times relevant, the above-mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

42. Defendant violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from Equifax and Plaintiff.

43. Defendant violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax and Plaintiff pursuant to 15 U.S.C. §1681i(a)(2).

44. Had Defendant reviewed the information provided by Equifax and Plaintiff, it would have corrected the inaccurate designation of the subject account, transmitting the correct information to Equifax. Instead, Defendant wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

45. Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of the investigation or reinvestigation of Plaintiff's disputes with Equifax.

46. Defendant violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Equifax after being put on notice and discovering inaccurate and misleading reporting with respect to the subject account.

47. Defendant violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information in Plaintiff's credit files.

48. Defendant failed to conduct a reasonable investigation of its reporting of the subject account, record that the information was disputed, or delete the inaccurate information from Plaintiff's credit files within 30 days of receiving notice of the disputes from Equifax under 15

6

U.S.C. §1681i(a)(1).

49. Despite the blatantly obvious errors in Plaintiff's credit files, and Plaintiff's efforts to correct the errors, Defendant did not correct the errors or trade line to report accurately. Instead, Defendant wrongfully furnished and re-reported the inaccurate and misleading information after Plaintiff's disputes to one or more third parties.

50. A reasonable investigation by Defendant would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continues to be reported in Plaintiff's credit files.

51. Had Defendant taken steps to investigate Plaintiff's valid disputes or Equifax's requests for investigation, it would have permanently corrected the erroneous and misleading credit reporting of the subject account.

52. By deviating from the standards established by the debt collection industry and the FCRA, Defendant acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax.

**WHEREFORE**, Plaintiff, WILBUR W. WASHINGTON, respectfully requests this Honorable Court for the following relief:

   a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
   b. An order directing that Defendant immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;
   c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;
   d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;
   e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the

underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f.  Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g.  Award any other relief as this Honorable Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

DATED: January 26, 2023                                  Respectfully submitted,

**WILBUR W. WASHINGTON**

By: */s/ Marwan R. Daher*

Marwan R. Daher, Esq.
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8180
mdaher@sulaimanlaw.com

8