UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

WILBUR W. WASHINGTON,             Case No. 4:22-cv-00922-O

        Plaintiff,
v.

CENTER STREET FINANCE, LP, doing
business as, CSF SERVICING,

        Defendants.
_____/

### DEFENDANT CENTER STREET FINANCE, LP'S
### MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [DE 19]

Defendant Center Street Finance, LP ("Center Street"), by and through its undersigned attorney, and pursuant to FED. R. CIV. P. 12(b)(6), files this Motion to Dismiss Plaintiff Wilbur Washington's ("Plaintiff") Amended Complaint [DE 19] because it fails to state a cause of action under the Fair Credit Reporting Act ("FCRA) and because Plaintiff lacks standing to bring the FCRA claim.

### INTRODUCTION AND COMPLAINT ALLEGATIONS[1]

On July 1, 2015, Plaintiff applied and obtained a line of credit with Center Street to finance a vehicle. Amend. Compl. ¶ 6. Plaintiff alleges that sometime in 2016 he was unable to make his payments, his account fell into default, and his account was ultimately charged off. *Id*. ¶¶ 7-8. In June, 2021, Plaintiff claims he noticed Center Street began reporting his loan as open, 120 days late, with a $15,632.00 balance, to the 3 major CRA's. *Id.* ¶ 9.  Plaintiff alleges on June 2, 2021, he mailed a dispute letter to Equifax advising of the erroneous reporting and that the account had

---

[1] The below account is based solely on the allegations in the Amended Complaint, which Center Street has not verified. Center Street reserves its right to contest any of Plaintiff's factual claims in the event this matter were to proceed beyond the pleading stage.

been charged off ("First Dispute Letter"). *Id.* ¶ 11. Plaintiff asserts "upon information and belief" Center Street received the First Dispute Letter. *Id.* ¶ 12. Plaintiff further alleges Equifax and Center Street failed to respond. *Id.* ¶ -13. Plaintiff further claims on July 6, 2021, he sent to Equifax a second dispute letter ("Second Dispute Letter"). *Id.* ¶¶ 14. Plaintiff alleges "under information and belief" Center Street received notice of Plaintiff's Second Dispute Letter. *Id*. ¶ 15. Plaintiff asserts Equifax and Center Street failed to respond to the Second Dispute Letter. *Id.* ¶ 16.

Plaintiff alleges he was forced engaged Freedom Market Pro., Inc. ("Freedom Market"), to clean up his credit report. *Id.* ¶ 17. Plaintiff alleges in November, 2021, he, Freedom Market's representative, and Center Street spoke about the subject account, during which Center Street stated the account should be a closed account. *Id.* ¶¶ 18-19. Plaintiff alleges he sent dispute letters directly to Center Street on November 19, 2021, January 11, 2022, and March 17, 2022, to all of which Center Street did not respond. *Id.* ¶¶ 20-23; 25. Plaintiff claims Center Street's reporting of its trade line is inaccurate, and creates a materially misleading impression that Plaintiff is seriously delinquent. *Id.*, ¶ 26. Plaintiff further alleges he is concerned he will be denied credit opportunities as a result of the false information. *Id.* ¶ 27. Plaintiff alleges Center Street failed to correct the errors or trade line to report the account accurately, and Center Street wrongfully furnished inaccurate and materially misleading information after his disputes. *Id.* Plaintiff further alleges Center Street failed to conduct a timely and reasonable investigation of his disputes after placing Center Street on notice of the erroneous credit reporting. *Id.* ¶ 28. As a result, Plaintiff alleges he experienced significant distrust, frustration, distress, and experienced a 40–60-point drop in his credit score, leading him to be labeled a high-risk customer. *Id.*, 30-36. On October 13, 2022, Plaintiff filed this lawsuit against Center Street in the United States District Court for

the Northern District of Texas asserting 1 count for violations of the Fair Credit Reporting Act ("FCRA"). *Id.* ¶¶ 37-52.  Center Street filed a motion to dismiss for failure to state a claim under the FCRA. DE 13.  In response, Plaintiff filed an Amended Complaint.  The Amended Complaint is due to be dismissed for the same reasons as the original complaint, because it fails to state a cause of action under the FCRA and because Plaintiff has failed to allege Center Street was notified by a Credit Reporting Agency of his notice of dispute to trigger liability under 15 U.S.C. § 1681s-2.  Even if he had properly alleged a claim under the FCRA, the Amended Complaint is due to be dismissed because Plaintiff lacks standing to bring the claim.

## LEGAL MEMORANDUM

### I. LEGAL STANDARD

Rule 12(b)(6) "allows motions to dismiss for failure to state a claim upon which relief can be granted."  *Gipson v. Deutsche Bank Nat'l. Tr. Co.*, No. 3:13-CV-4820-L, 2015 WL 2069583, at *3 (N.D. Tex. May 4, 2015).  To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the district court must accept all well pleaded facts as true and view them in light most favorable to the plaintiff."  *Baker v. Putnal*, 75 F. 3d 190, 196 (5th Cir. 1996).  "To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient." *Holt v. Deutsche Bank Nat'l Tr. Co.*, No. 4:16-CV-196-A, 2016 WL 1633254, at *1 (N.D. Tex. Apr. 20, 2016).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, at *id*. "[A] district court may consider an extrinsic document even on Rule 12(b)(6) review if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *U. S. ex rel. Osheroff v. Humana, Inc*., 776 F.3d 805, 811 (11th

Cir. 2015); *accord Collins v. Morgan Stanley Dean Witter*, 224 F. 3d 496, 498-99 (5th Cir. 2000). Here, Plaintiff's Amended Complaint fails to state a cause of action upon which relief can be granted and is due to be dismissed.

## II.     PLAINTIFF FAILS TO ALLEGE AN FCRA VIOLATION

Plaintiff alleges Center Street violated its responsibilities pursuant to 15 U.S.C. § 1681s-2(b)(1)(A)-(E), which states

> (b) Duties of furnishers of information upon notice of dispute
>
> (1)     In general
>
> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 10681s-2(b)(1)(A)-(E).

"Section 1681s-2(b) sets forth the duties of furnishers of information once a consumer reporting agency gives the furnisher notice of a consumer's dispute over the completeness or

accuracy of information provided by the furnisher to the consumer reporting agency." *Davis v. Sallie Mae, Inc.*, No. 3:09-cv-00821-B, 2009 WL 2525303, at *2 (N.D. Tex. Aug. 18, 2009). "While a furnisher of information may have liability for violations of 1681s-2(b), it is clear that any liability for alleged violation of 1681s-2(b) does not arise until a consumer reporting agency reports an inaccuracy to the furnisher and furnisher fails to correct the error." *Id.*, at *3. "Such notice is necessary to trigger the furnisher's duties under Section 1681s-2(b). *Id.*

The gravamen of an FRCA claim under the section Plaintiff cites, is the furnisher's failure to investigate, review, report, and correct *after* it receives notice from a consumer reporting agency. Plaintiff fails to plead facts that Equifax actually notified Center Street of his dispute. Instead, he alleges that "under information and belief" Center Street was notified of the dispute. This is insufficient as a matter of law. *Nachawati v. SunTrust Bank*, CIV.A. 3:12-CV-0796-, 2012 WL 3024187, at *1 (N.D. Tex. July 24, 2012) (dismissing FCRA complaint for failure to state a claim based on allegations based upon "information and belief"). In *Nachawati*, the Court dismissed plaintiff's FCRA complaint because plaintiff's claim failed to state a plausible claim for relief based on conclusory allegations that "upon information and belief" he initiated a dispute with a CRA and the CRA notified the defendant. This Court should dismiss Plaintiff's Amended Complaint for the same reasons.

Plaintiff's dispute appears to be with Equifax, instead of Center Street. Pursuant to § 1681i, credit reporting agencies are required to conduct a reasonable investigation into any information a consumer disputes and the agency retains in its file. Plaintiff pleads he sent dispute notices, but Equifax failed to respond to him. Amend. Compl. ¶¶ 11-16. Under § 1681s-2(b)(1), Plaintiff must plead Equifax received Plaintiff's dispute letters, and subsequently notified Center

Street of the dispute. Equifax's notification is a condition precedent and must be satisfied before Center Street's duty to investigate arises.

Further, Plaintiff's allegations he sent disputes directly to Center Street, which failed to respond to him or correct the information, still does not invoke § 1681s-2(b)(1) liability. "Under the FCRA, a furnisher of information may be liable under 15 U.S.C. § 1681s–2(b) only if the plaintiff pleads and proves that the furnisher was notified by a consumer reporting agency—not merely by the consumer—of the disputed debt." *Alam v. Sky Recovery Serv., Ltd.*, No. H-08-2377, 2009 WL 693170, at *3 (S.D. Tex. Mar. 13, 2009). Plaintiff attempts to claim the FCRA requires furnishers to respond to disputes about credit reporting items that are raised directly by the consumers, as set forth in § 1681s-2(a)(8), "which pertains to the obligations of a furnisher of information up direct notice by the consumer about inaccuracies in a consumer credit report. It is well settled that there is no private right of action for violations of § 1681s-2(a)." *Id.* at *4 . Therefore, Plaintiff fails to state a cause of action and the Amended Complaint should be dismissed.

### III.   CENTER STREET'S ACTIONS WERE NOT WILLFUL.

Plaintiff alleges Center Street "deviated from the standards established by the debt collection industry [and] acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax." Amend. Compl. ¶ 52. Plaintiff's allegations fail to support his claim that Center Street willfully violated § 1681S-2(b). "Section 1681n of the FCRA provides consumers with a cause of action against '[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA].'" *Scott v. Amex/Centurion S7T*, No. 3:01-cv-1594-H, 2001 WL 1645362, at * 3 (N.D. Tex. Dec. 18, 2001) (citing 15 U.S.C. § 1681n). "According to section 1681n, a defendant commits a willful violation

and is subject to punitive damages only if it engages in willful misrepresentations or concealments." *Cameron v. Greater New Orleans Fed. Credit Union*, 713 F. App'x 238, 240 (5th Cir. 2018) (internal quotation marks and citations omitted). "Noncompliance is considered willful when the defendant knowingly and intentionally committed an act in conscious disregard for the rights of others." *Id.* "Generally, courts have allowed a willful noncompliance claim to proceed where a defendant's conduct involves willful misrepresentations or concealments." *Cousins v. Trans Union Corp.*, 246 F. 3d 359, 372 (5th Cir. 2001). "Malice or evil motive need not be established for a punitive damages award, but the violation must have been willful." *Id.* Plaintiff fails to allege Center Street engaged in a willful misrepresentation or actively concealed information. Plaintiff merely concludes Center Street acted willfully. This is pleading deficiency is fatal to Plaintiff's claim.

### **Plaintiff Lacks Article III Standing**.

Plaintiff's Complaint fails to allege a concrete injury sufficient to demonstrate she has Article III standing. "Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies' in which a plaintiff has a 'personal stake.'" *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Raines v. Byrd*, 521 U.S. 811, 819–820 (1997). To have Article III standing to sue in federal court, "a plaintiff must show (i) that the plaintiff suffered concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion* at *id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561 (1992). If "the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Casillas v. Madison Ave. Assoc., Inc.*, 926 F. 3d 329, 333 (7th Cir. 2019). "[C]ourts should assess whether the alleged injury to the plaintiff has a 'close

relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Spokeo, Inc. v. Robins*, 578 U. S. 330, 340 (2016). "If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion,* at 2204. Intangible harms such as reputation harm, disclosure of private information or intrusion upon seclusion can also substantiate a concrete harm. *Id.*

To assist the Court in determining whether a harm is sufficiently concrete, Congress' views may be "instructive". *Id.* "Courts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation." *Id.* As a result, Congress may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law." *Id.* at 2205. However, Congress may not enact an injury to existence. *Id.* In other words, courts have rejected the proposition "a plaintiff automatically satisfies the injury-in-fact requirement when a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U.S. at 341. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

Here, Plaintiff fails to allege an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" other than a statutory violation. Plaintiff alleges he is *concerned* he will be denied credit opportunities as a result of the false information. Amend. Compl. ¶ 27. (emphasis added). He further alleges he experienced significant distrust, frustration, distress, and experienced a 40–60-point drop in his credit score, leading him to be labeled a high-risk customer. *Id.*, 30-36. However, Plaintiff fails to allege these injuries actually exist. *Spokeo* at 340-341. Plaintiff does not allege he has been denied employment opportunities, housing, income or has been denied new or favorable credit terms as a result of the alleged false tradeline.

Plaintiff's failure to allege these facts reduces his allegations to mere conclusions and renders Plaintiff's alleged damages abstract and not concrete as a matter of law.

Further, Plaintiff's claim of intangible injuries similarly fail. "Intangible injuries sometimes qualify as concrete, but not always." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 997 (11th Cir. 2020). "In determining whether an intangible harm constitutes injury in fact, … it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as provided a basis for a lawsuit in English or America courts." *Spokeo,* 578 U.S. at 340-41. Here, Plaintiff alleges he has suffered the loss of credit opportunity, the loss of ability to purchase and benefit from a credit line, increased interest rates, expenses arising from local telephone calls, meeting with his attorneys, tracking the status of his disputes, monitoring his credit files, and mental and emotional pain and suffering. Amend. Compl. ¶ 35. "Plaintiff['s] blanket allegations of 'anxiety, emotion distress', without more, are too conclusory." *Baron v. Syniverse Corp.*, No. 8:21-cv-2349-SFB-SPF, 2022 WL 6162696, at * 7 (M.D. Fla. Oct. 7, 2022); *see also Iqbal*, 556 U.S. at 678 (The allegations must contain more than "an unadorned, the-defendant-unlawfully-harmed-me-accusation"). Plaintiff fails to allege any specific or concrete harm she has actually suffered from Center Street's alleged failure to delete the tradeline. "[N]ot all inaccuracies cause harm or present any material risk of harm." *Spokeo*, 578 at 342. Plaintiff 's allegations are merely conclusory and do not allege she has suffered and continues to suffer any concrete harm that has a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir.) (internal quotation marks and citation omitted).

## CONCLUSION

For the reasons set forth herein, this Honorable Court should dismiss Plaintiff's Amended Complaint, with prejudice.

DATED: February 9, 2023                                      Respectfully submitted,

                              */s/ James R. Liebler, II*
                              JAMES R. LIEBLER II
                              Florida Bar No. 115348
                              E-mail: JRLII@lgplaw.com
                              **LIEBLER, GONZALEZ & PORTUONDO**
                              Courthouse Tower - 25th Floor
                              44 West Flagler Street
                              Miami, FL 33130
                              Telephone: (305) 379-0400
                              Fax: (305) 379-9626
                              *Attorneys for Center Street Dealer Services, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of February, 2023, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

                              */s/ James R. Liebler, II*
                              JAMES R. LIEBLER, II